# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| **MODERN GROUP, ET AL.** | *CIVIL ACTION NO. 07-0660 |
| VS. | *MAGISTRATE JUDGE HILL |
| **TIGER ENVIRONMENTAL & RENTAL SERVICES, LLC, ET AL.** | *BY CONSENT OF THE PARTIES |

## REASONS FOR RULING

Pending before the court is the plaintiffs' Rule 12(b)(6) Motion to Dismiss or, alternatively, Motion for Summary Judgement. [rec. doc. 83]. During oral argument, the parties agreed that because documents, which are not part of the complaints or counterclaims filed in this matter, have been submitted in support and in opposition to the Motion, the Motion must be treated as a Motion for Summary Judgment under Rule 56.[1] *See* Fed.R.Civ.P 12(d).

By this Motion, plaintiffs, the Modern Group, Ltd. and Offshore Rental, Ltd. (collectively, the "Modern Group"), seek dismissal of the Counterclaims filed by defendants, Tiger Environmental and Rental Services, LLC and Karl Comeaux (collectively, "Tiger"). Tiger has filed opposition [rec. doc. 86], to which the Modern Group has filed a Reply [rec. doc. 90]. Oral argument on the Motion was held, and the motion was taken under advisement. For the reasons which follow, the Motion for Summary Judgement [rec. doc. 83] is **GRANTED**.

---

[1] These documents include affidavits and deposition transcripts. It is black-letter law that a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is to be evaluated only on the pleadings. *Mahone v. Addicks Utility District of Harris County*, 836 F.2d 921, 935 (5th Cir. 1988).

## **Standard on Motion for Summary Judgment**

Fed.R.Civ.Proc. Rule 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed.R.Civ.Proc. Rule 56(e) provides, in pertinent part, as follows:

When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

The Modern Group's Motion for Summary Judgment is properly made and supported. Thus, Tiger may not rest upon its allegations or denials in its pleadings, but rather must go beyond the pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54 (1986).

However, metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions and those supported by only a scintilla of evidence are insufficient. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Additionally, summary judgment is mandated against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 106 S.Ct. at 2552.

Tiger has submitted evidence in opposition to the instant Motion. However, Tiger's evidence fails to demonstrate that there is a genuine issue of material fact for trial. Accordingly, summary judgment with respect to Tiger's counterclaims asserted against the Modern Group is appropriate in this case.

**Factual Background**

The instant lawsuit was filed by the Modern Group on October 13, 2006[2]. In its First Amended Complaint, the Modern Group asserts a federal trademark infringement claim and Louisiana state law claims for trademark dilution and unfair trade practices. [rec. doc. 61].

Tiger has asserted federal counterclaims seeking cancellation of the Modern Group's trademarks based on alleged fraud and abandonment, a claim for damages resulting from the Modern Group's alleged fraud in the registration of its trademarks and a claim for attorney's fees in the event that Tiger prevails on its counterclaims. [rec. doc. 67]. The essence of Tiger's counterclaims, is that the Modern Group does not *sell* the goods listed in the initial registrations of its three trademarks (relating to metal containers for collecting and storing waste), that these goods are merely *rented* and that, therefore, the registration of the trademarks was improper.

Tiger asserts that the since the Modern Group is in the business of renting metal containers, protection should have been sought by registration of a service mark rather than a trademark. Tiger also asserts that the Modern Group knowingly made false and misleading

---

[2] The case was filed in the United States District Court for the Eastern District of Texas, and transferred to this court on April 11, 2007. [rec. doc. 30].

statements to the United States Patent and Trademark Office in initially registering its trademarks in international class 6, by suggesting that it sold the goods (metal containers) listed in the registration and used those goods in commerce for the approved purpose, when it knew that the goods were used in connection with the provision of a service (the rental of the metal containers). Further, Tiger asserts that the trademarks have been abandoned because they have not been continually used in connection with the *sale* of the metal containers, the purpose authorized by the registrations.

The Modern Group filed the instant Motion, arguing that Tiger's underlying premiss, that is, that the Modern Group's trademarks protect only the *sale* of metal containers, rather than the *rental* of those containers, is without legal foundation. To the contrary, the Modern Group asserts that it properly registered trademarks under the Lanham Act because the marks are affixed to goods (metal containers), some of which have been manufactured by its subsidiary, Dragon Products, Ltd. ("Dragon"), and hence, although not sold but instead rented, the trademarks identify and distinguish these goods (metal containers) from those manufactured by others, and also designate the source of these goods (metal containers).

Moreover, the Modern Group asserts that the fact that a trademark identifies goods, does not preclude that trademark from also referring directly or indirectly to services, or to indirectly advertising services. The Modern Group further asserts that some of the metal containers at issue are manufactured by Dragon, a subsidiary of the Modern Group in Texas (or other out of state manufacturer) and are transported across state lines to its yards in Louisiana. From these yards the containers are rented to its customers for use offshore in the Gulf of

Mexico. All of the containers bear one or more of the trademarks at issue in this case, having been affixed by Dragon or the Modern Group's Louisiana yard personnel. The Modern Group argues that the trademarks have, thus, been properly used "in commerce" under the Lanham Act.

## Law and Analysis

In Opposition to the motion for of summary judgement, Tiger argues that this court must look at the use to which the metal containers listed in the Modern Group's initial registrations are put in order to determine if they are goods susceptible of trademark registration. In Tiger's view, the rental of the tanks, without any permanent transfer of ownership, constitutes a "service" and not a sale. Tiger attaches no significance to the undisputed facts that the metal containers are tangible items manufactured by a subsidiary of the Modern Group and that the Modern Group has, in the past, sold several of these containers to oilfield customers. Thus, Tiger asserts that the Modern Group should have sought protection via registration of a service mark, not a trademark.

Tiger's argument runs counter to the plain language of the Lanham Act. Under the Lanham Act, a trademark is defined as "any word, name, symbol, or device or any combination thereof" used by an individual or entity "to identify and distinguish his or her goods . . . from those manufactured *or* sold by others and to indicate the source of the goods, even if that source is unknown" 15 U.S.C. § 1127 (emphasis added). The Fifth Circuit has said that the "primary, perhaps singular purpose of a trademark is to provide a means for the consumer to

5

separate or distinguish one manufacturer's goods from those of another . . . [a] trademark aids the public in selecting particular goods." *Blue Bell, Inc. v. Farah Manufacturing Company, Inc.*, 508 F.2d 1260, 1265 (5th Cir. 1975).

In this case, the Modern Group identifies and distinguishes metal containers manufactured by it from those manufactured by others through display of its trademark affixed to each container, and further indicates the source of the metal containers as originating from the Modern Group. While the Modern Group does not primarily sell its metal containers, that is not required by the plain wording of § 1127 as set out above. To the contrary, the use of the disjunctive "or" between the words "manufactured" and "sold" leaves no doubt that a trademark need merely identify and distinguish goods which one manufactures, without the necessity of a sale of those goods.

For this reason, Tiger's claim of fraud or deception in connection with the Modern Group's registration of its trademarks in international class 6, fails as a matter of law. Registration does not necessarily suggest that one only sells the good listed in the registration. Trademark registration may validly rest on the manufacture of a good. Simply stated, there was no representation (or misrepresentation) by the Modern Group, express or implied, that by registering its trademarks in international class 6, the Modern Group intended to sell its metal containers, as opposed to merely renting them.

Moreover, while the term "goods" is not defined in the Act, in defining the scope of service mark registration (in contrast to trade mark registration) the Court of Customs and

Patent Appeals (CCPA) has indicated the distinction between service mark and trademark should be for the protection of tangible items (by trademark), as opposed to intangible items (by service mark). In that regard, the court said as follows:

> Congress intended a service mark to function in such a fashion as to identify and distinguish those things of an intangible nature, such as services, in contradistinction to the protection already provided for the marks affixed to those things of a tangible nature such as goods and products.

*In re Radio Corp. of America*, 205 F.2d 180, 98 U.S.P.Q. 157 (C.C.P.A. 1953).

"Thus, while a trademark serves to identify and distinguish the source and quality of a tangible product, a service mark functions to identify and distinguish the source and quality of an intangible service." 3 McCarthy on Trademarks and Unfair Competition § 19:81 (4th Ed.). In this case, the Modern Group's trademarks identify to the consuming public the source and quality of the tangible metal containers it manufactures and rents. As such, protection by registration of a trademark was proper. The Modern Group's marks are affixed to metal containers which are manufactured and rented by the Modern Group, which clearly identifies and distinguishes these metal containers from those manufactured and rented by others.

To the extent that Tiger asserts fraud in the registration of its trademarks because trademarks protect only the sale of goods as opposed to rental of goods, that claim fails as a matter of law, based on the reasoning of the First Circuit in *New England Duplicating v. Mendes*, 190 F.2d 415, 417 (1st Cir. 1951), which the undersigned finds persuasive. The court in *New England Duplicating* noted that to construe the trademark statutes as applying solely to the *sale* of a good would read an unwarranted limitation into the law, denying trademark

7

registration "to any manufacturer who adopted a mark to distinguish or identify his product, and perhaps applied it thereon for years, if he should in practice *lease* his goods rather than sell them, as many manufacturers of machinery do." *Id.* at 417 (emphasis added). Indeed, valid trademark rights have been recognized in connection with goods which are given away free of charge. *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1194 (11th Cir. 2001).

Further, while the undersigned does not find that the rental of the containers by the Modern Group are "services" as contemplated by the Act[3], the undersigned notes that the fact that a trademark identifies goods, does not preclude that trademark from also referring directly or indirectly to services, or indirectly advertising services. *See, In re Burger King*, 136 U.S.P.Q. 396, 397 (TTAB Feb. 7, 1963) and *In re American Savings and Accounting Supply, Inc.*, 172 U.S.P.Q. 406, 407 (TTAB Jan 26, 1972). Indeed, counsel for Tiger conceded this point during oral argument.

Of course, the continuing validity of Modern's trademark registrations is dependent upon use. Tiger suggests that the Modern Group has not validly "used" its registered trademarks because it has not sold the metal containers that it has manufactured. Trademark rights under the Lanham Act are conditioned upon use in commerce. *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97, 39 S.Ct. 48, 63 L.Ed. 141 (1918) (establishing that "the right to a particular mark grows out of its use, not its mere adoption"). A mark is deemed

---

[3]The ordinary transaction involves the placement of an order for metal containers by the oilfield renter after which the Modern Group arranges shipment. There is no evidence in the record that the Modern Group extends any "service" beyond that routine rental transaction. The renter is burdened with meeting the requirements of cleaning the tanks and disposing of the waste stored within.

8

"in use in commerce" when it is affixed to the goods with which it is associated and those goods are then "sold or transported in commerce." 15 U.S.C. § 1127.

Contrary to Tiger's position, sales of goods are not necessary to establish trademark use; for purposes of the Lanham Act, transportation alone qualifies. *New England Duplicating*, 190 F.2d at 417 ("The use of the disjunctive 'or' between 'sold' and 'transported' leaves no doubt that a transportation . . . is enough to constitute a 'use' even without a sale.").

Tiger argues that *New England Duplicating* is an old case, and that more recent cases suggest that the Patent and Trademark Office no longer registers trademarks if they are intended to be used in connection with a service (the rental of the good) rather than the sale of the good, regardless of whether the good is manufactured by the registrant. However, Tiger cites no subsequent or intervening regulation of the Patent and Trademark Office which limits the language of the statute or calls into question the interpretation of the statute by the First Circuit in *New England Duplicating*. Moreover, counsel conceded during oral argument that he, like the court, cannot "square" these newer cases with the reasoning in *New England Duplicating*.

The undersigned's research reveals no case from any court which overrules the First Circuit's decision in *New England Duplicating* nor seriously questions that court's reasoning. To the contrary, the case has been favorably cited by the Fifth Circuit for the proposition that "sales to customers are not the *sine qua non* of trademark use . . ." *Blue Bell, Inc.,* 508 F.2d at 1267. Moreover, as set out above, *New England Duplicating* has more recently been cited favorably by the Eleventh Circuit in finding that even *free* distribution of software over the

9

internet was sufficient to create trademark rights. *Planetary Motion, Inc. v. Techsplosion, Inc.*, *supra*.

Finally, a widely recognized authority on Trademark Law, J. Thomas McCarthy, author of the comprehensive treatise, McCarthy on Trademarks and Unfair Competition, recognizes *New England Duplicating* as the "seminal case" in this area, and characterized as "clear" that transportation alone without a sale constitutes a "use" of the mark. 3 McCarthy on Trademarks and Unfair Competition § 19:118 (4th Ed.).

In light of these authorities, the undersigned cannot accept Tiger's argument. It is undisputed in this case that the Modern Group has transported, and continues to transport, its metal containers bearing its registered trademarks in commerce. Under the authorities set forth above, that transportation is sufficient to constitute a valid "use" of the Modern Group's registered trademarks under the Lanham Act. Furthermore, because the Modern Group has validly and continuously "used" its registered trademarks in commerce, Tiger's claim of abandonment fails as a matter of law.

Because Tiger's counterclaims for cancellation of the Modern Group's trademarks based on fraud and abandonment fail as a matter of law, its counterclaims for damages resulting from the Modern Group's alleged fraud in the registration of its trademarks, and its claim for attorney's fees in the event that Tiger prevails on its counterclaims, must likewise fail as a matter of law.

## Conclusion

Based on the foregoing reasons, the Motion for Summary Judgment filed by the Modern Group, Ltd. and Offshore Rental, Ltd. [rec. doc. 83] is **GRANTED**. Accordingly, the Counterclaims filed by Tiger Environmental and Rental Services, LLC and Karl Comeaux are **DISMISSED WITH PREJUDICE**.

Signed this 10th day of July, 2009, at Lafayette, Louisiana.

_____
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE